FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAR 0 1 2023

TAMMY H. DOWNS, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

NATIONAL TRUST INSURANCE COMPANY
and FCCI INSURANCE COMPANY                                    PLAINTIFFS

Vs.                              Case No. 4:23-CV-154-KGB

ACE SIGNS OF ARKANSAS L.L.C.
d/b/a ACE SIGN COMPANY and ACE SPORTS LLC
and TRUMANN SCHOOL DISTRICT                                   DEFENDANTS

**COMPLAINT FOR DECLARATORY JUDGMENT**

COME the Plaintiffs, National Trust Insurance Company, and FCCI Insurance Company, by and through their attorneys, McMillan, McCorkle & Curry LLP, and for their Complaint for Declaratory Judgment herein, states:

1.

National Trust Insurance Company, is incorporated under the laws of the State of Indiana with its home office in Indianapolis, Indiana. National Trust Insurance Company is authorized to engage in the insurance business in the State of Arkansas. National Trust Insurance Company is a subsidiary of FCCI Insurance Group, which is a subsidiary of FCCI Insurance Company.

FCCI Insurance Company is incorporated under the laws of the State of Florida with its home office in Sarasota, Florida. FCCI Insurance Company is authorized to engage in the insurance business in the State of Arkansas.

2.

Ace Signs of Arkansas, L.L.C. (herein after "Ace') is an Arkansas Corporation with its principal place of business in Little Rock, Pulaski County, Arkansas. Ace Signs of Arkansas,

This case assigned to District Judge Baker
and to Magistrate Judge Volpe

L.L.C. does business under the names of Ace Sign Company and Ace Sports, LLC, with those fictitious names registered with the Arkansas Secretary of State.

3.

Trumann School District (hereinafter Trumann) is an Arkansas public school district located in Trumann, Poinsett County, Arkansas.

4.

There is complete diversity of citizenship between the Plaintiffs and the Defendants.

5.

National Trust Insurance Company and FCCI Insurance seek a declaratory judgment that there is no coverage under the policies issued by them to Ace for claims made in a lawsuit brought by Trumann in the Circuit Court of Poinsett County, Arkansas styled *Trumann School District v. Ace Signs of Arkansas, L.L.C. d/b/a Ace Sign Company and Ace Sports, LLC*, case number 56CV-22-103[1]. A copy of the Complaint in the action filed by Trumann is attached herein as "Exhibit A."

6.

National Trust Insurance Company issued a series of Commercial General Insurance (hereinafter CGI) policies to Ace in 2019, 2020, 2021, and 2022, bearing consecutive policy numbers CPP100038585-00, CPP100038585-01, CPP100038585-02, and CPP100038585-03. The policy period for each of these policies was for February 1 of the year the policy was issued

---

[1] A Motion to Dismiss or Transfer has been filed by Ace seeking the transfer of the case to the Circuit Court of Saline, County, Arkansas. Ace's Motion is based on a venue selection provision in the contract between the parties. In its Response to the Motion, Trumann disputes that the forum selection provision is enforceable. The Motion is currently pending before the Court in the underlying lawsuit.

through February 1 of the next year. The CGL policies are attached hereto as "Exhibits B - E" consecutively.

7.

FCCI Insurance Company issued a series of Commercial Liability Umbrella (hereinafter "CLU") policies to Ace in 2019, 2020, 2021, and 2022, bearing consecutive policy numbers UMB100038591-00, UMB100038591-01, UMB100038591-02, and UMB100038591-03. The policy period for each of these policies was for February 1 of the year the policy was issued through February 1 of the next year. The CLU policies are attached hereto as "Exhibits F - I" consecutively.

8.

The CGL policies issued by National Trust Insurance Company to Ace had policy limits of $1,000,000.00 per occurrence, with the exception of Coverage G - Contractors Errors and Omissions Coverage which had a policy limit of $10,000.00 per policy period irrespective of the number of claims in each policy period. The CLU policies issued by FCCI Insurance Company had policy limits of $4,000.000.00 per occurrence.

The Complaint filed by Trumann Schools in the underlying case does not specify a total demand for damages against Ace but does reference payments by Trumann to Ace of $336,349.67 (Complaint, Para. 4) and $264,690.64 (*Id.*, Para. 6). The Complaint contains a prayer for damages "in an amount in excess of the amount required for federal court jurisdiction in diversity of citizenship cases" as permitted by Rule 8(a), Arkansas Rules of Civil Procedure.

The amount in controversy exceeds $75,000.00. This court, therefore, has jurisdiction under 28 U.S.C. 1332 as a controversy arising in a case within its jurisdiction among parties of

diverse citizenship. This action is brought pursuant to 28 U.S.C. 2201 seeking a declaration of the respective rights of the parties under policies of insurance. The Court has jurisdiction over the subject matter and over the person of all parties herein. The Court is the appropriate venue to hear this matter.

9.

The Complaint by Trumann in the underlying lawsuit seeks damages from Ace arising from a purchase by Trumann of a football stadium scoreboard from Ace. The Complaint alleges that the scoreboard did not satisfy the requirements of the contract between Ace and Truman, breaches of warranty by Ace, and failures by Ace to effect repairs to cure the alleged deficiencies. (Complaint, Paras. 3-16) The Complaint contains a count for negligence but those allegations all center on the alleged failure by Ace to comply with the terms of the contract. (Complaint, Paras. 17-19)

10.

FCCI Insurance Group, Inc., is currently providing a defense to Ace in the underlying action by Trumann under a reservation of rights to deny coverage for the claims made by Trumann in that action. It is anticipated Ace will claim a right under the insurance policies for indemnification for any judgment rendered against it in the underlying action brought by Trumann and that the Plaintiffs owe a duty to defend Ace in the underlying action. It is also anticipated that Trumann will claim a right to recover any judgment against Ace in the underlying action under the policies issued by the Plaintiffs to Ace.

11.

The CGL policy issued by National Trust Insurance Company to Ace and the CLU policies issued by FCCI Insurance Company in years 2020, 2021, and 2022 do not contain any relevant differences in the policies from year to year. Citations to policy provisions below are to the 2019 policies (CPP100038585-00)(UMB 100038591-00).

12.

Some part of the damages alleged by Truman in its Complaint in the underlying action are alleged to have occurred before February 1, 2019. The CGL and CLU policies provide coverage only for property damage that "occurs during the policy period." (CGL, Page 1 of 16)(CLU Page 1 of 18)   Any property damage claimed by Trumann before February 1, 2019, is not covered under the terms of the policies issued by National Trust Insurance Company and FCCI Insurance to Trumann.

13.

The CGL Policy excludes coverage for claims arising from a contractual obligation.

> b. Contractual Liability
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> (1) That the insured would have in the absence of the contract or agreement . . . .
> (CGL, Page 2 of 16)

The CLU similarly excludes coverage for claims arising from a contractual obligation.

> b. Contractual Liability
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> (1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  (CLU, Page 2 of 16)

14.

The CGL policy excludes coverage for damage to Ace's product and work.

k.      Damage To Your Product
"Property damage" to "your product" arising out of it or any part of it.

l.      Damage To Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

m.      Damage To Impaired Property Or Property Not Physically Injured
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2)      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
(CGL, Page 5 of 16)

The CLU policy similarly excludes coverage for damage to Ace's product and work.

b. Contractual Liability
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1) That the insured would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  (CLU, Page 2 of 16)
. . .
n. Damage To Your Product
"Property damage" to "your product" arising out of it or any part of it.

o. Damage To Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".  (CLU, Page 5 of 16)

15.

The exclusions quoted in Paragraphs 13 and 14 above exclude coverage for the claims made by Trumann in its Complaint against Ace in the underlying action.

16.

The CGL policy issued by National Trust Insurance Company to Ace contains an endorsement titled First Choice Contractors Liability Endorsement.  That endorsement contains the following insuring agreement under Coverage G - Contractors Errors and Omissions.

> If you are a "contractor", we will pay those sums that you become legally obligated to pay as damages because of "property damage" to "your product", "your work" or "impaired property", due to faulty workmanship, material or design, or products including consequential loss, to which this insurance applies. The damages must have resulted from your negligent act, error or omission while acting in your business capacity as a contractor or subcontractor or from a defect in material or a product sold or installed by you while acting in this capacity. The amount we will pay for damages is described in SECTION III LIMITS OF INSURANCE.  (CGL, Page 6 of 14).

> Coverage G defines "contractor" as:

> "Contractor" means a person or organization engaged in activities of building, clearing, filing, excavating or improvement in the size, use or appearance of any structure or land.  "Contractor" does not include a "seller" as defined elsewhere in this endorsement.  (CGL, Page 7 of 14).

> Cover G defines "seller" as:

> "Seller" means a person or organization that manufactures, sells or distributes goods or products.  "Seller" does not include a "contractor" as defined elsewhere in this endorsement.  (CGL, Page 6 of 14)

Under the allegations of Trumann's Complaint in the underlying lawsuit, Ace sold or distributed the scoreboard to Trumann.  As a result, Ace is a "seller" and not a "contractor" and Coverage G does not apply to provide coverage for Ace for the damages alleged by Trumann.

17.

The CGL policy contains following language concerning a duty to defend claims and suits for damages that are covered by the policy.

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. **However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.** We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. (CGL, Page 1 of 16)(Emphasis added)

A similar provision is found in the CLU policy.

> . . . we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. (CLU, Page 1 of 18)

Coverage G specifically excludes any duty to defend Ace whether or not there is coverage under that provision.

> We have no duty to investigate or defend claims or "suits" covered by this Contractors Errors or Omissions coverage. (CGL, First Choice Contractors Liability Endorsement, Page 6 of 14)

Since there is no coverage provided under the CGL and CLU policies, there is no duty on the part of either National Trust Insurance Company or FCCI Insurance Company to provide a defense to Ace in the underlying lawsuit under those policy provisions. Whether or not there is a duty to indemnify under Coverage G - Contractors Errors and Omissions, there is no duty on the part of either National Trust Insurance Company or FCCI Insurance Company to provide a defense to Ace in the underlying lawsuit under Coverage G- Contractors Errors and Omissions.

WHEREFORE, National Trust Insurance Company and FCCI Insurance Company pray for declaratory judgment finding there is no coverage under the policies issued by them requiring them to indemnify Ace for any judgment that may be entered against it in the action brought by the plaintiffs in the underlying action, for declaratory judgment that National Trust Insurance Company and FCCI Insurance Company owe no duty to provide a defense for Ace in the underlying case, and for any other just relief.

    Respectfully submitted,

    McMILLAN, McCORKLE & CURRY, LLP
    929 Main Street
    P. O. Box 607
    Arkadelphia, AR  71923
    (870) 246-2468
    (870) 246-3851 - Facsimile
    E-Mail: curry@mtmc-law.com

    By: _____
    F. Thomas Curry
    Arkansas Bar #82189

**IN THE CIRCUIT COURT OF POINSETT COUNTY, ARKANSAS**
**CIVIL DIVISION**

**TRUMANN SCHOOL DISTRICT**                                              **PLAINTIFF**

**v.**                                    NO. 56CV-22-1030(12)

**ACE SIGNS OF ARKANSAS L.L.C.**
**dba ACE SIGN COMPANY AND ACE SPORTS LLC**                              **DEFENDANT**

POINSETT CO. CIRCUIT CLERK
MISTY RICHARDSON-RUSSELL
FILED
JUN 0 3 2022
AM                                PM
8 | 9 | 10 | 11 | 12 | 1 | 2 | 3 | 4 | 5

**COMPLAINT**

1. Plaintiff Trumann School District (Trumann) is an Arkansas public school district located in Trumann, Poinsett County, Arkansas. Defendant Ace Signs of Arkansas L.L.C. (Ace), doing business as Ace Sign Company and Ace Sports LLC, has its principal place of business at 11935 Interstate 30, Little Rock, Arkansas, 72209. Its agent for service is Jason Offutt, 5911 Worth Avenue, Benton, Arkansas, 72019.

2. Jurisdiction is appropriate in the Circuit Courts in Arkansas based upon the domicile of all entities in this matter and since jurisdiction is not otherwise assigned pursuant to the Arkansas Constitution. See Ark. Code Ann. § 16-13-201 (Supp. 2021). Venue is proper in Poinsett County because the events and omissions giving rise to the causes of action occurred there and because the county is the sole domicile of the plaintiff. See Ark. Code Ann. § 16-60-101(1) and (3) (Supp. 2021).

**Factual Background**

3. Trumann solicited proposals for an LED Video Board approximately 15 feet by 30 feet in size with a football scoreboard, play clocks, a TriCaster Video Replay System, two cameras, and software to be installed on site with training in use included. Three

**EXHIBIT A**

proposals were received. The most expensive of these, from Ace, was selected by the Trumann School Board because of the addition of marketing and on-site marketing resources, the use of a sports marketing team, high school and collegiate sports applications and references, classroom instruction and material for the replay system and its software, and a promised one-day service response. A copy of the comparison sheet for these three proposals is attached as Exhibit A.

4. At its March 12, 2018 regular board meeting, the Trumann School Board voted unanimously to accept the video scoreboard bid of Ace at the price of $336,349.68. A copy of the minutes of this meeting is attached as Exhibit B.

5. Trumann held a grand opening of its new RMC Trumann Wildcat Stadium on September 7, 2018. The video board was to be installed and operating for this unveiling to the public. The board was working during the game, but the side panels stating "Trumann" and "Wildcats" as well as two sponsorship panels had not been delivered or installed.

6. From November of 2018 through February of 2019, parts fell off the board numerous times without warning. Ace was called for repairs. On April 25, 2019, lightning struck the video board. The strike was captured on the district's video footage. Ace was paid $264,690.64 to make repairs and to install a new TriCaster system. On June 22, 2019, the video board was shown to the public.

7. On September 26, 2019, the entire video board structure folded over to the ground when the steel I-beams supporting it bent. Ace admitted that it had problems with the structure since its installation and that additional bracing had been installed which added additional weight. Ace agreed to replace the damaged scoreboard, concrete, footing, and fencing at no expense to Trumann.

8. Ace claimed to have rebuilt the video board. The board was working during the first week in May of 2020 for the limited function of showing photos of graduating seniors for families to drive by and see. However, the fence and concrete around the base had not been replaced. In August of 2020, the video board would not operate. Ace was contacted for repairs. The video board worked during the September 4, 2020 football game. It quit working during the week following, no Ace repairman came, and it did not work for the September 11, 2020 football game.

9. On July 26, 2021, it was discovered that the display panels on the video board were not working. Ace was called. Someone came to look at the board on August 5, 2021 but left saying he needed a part. On August 9, 2021, Ace sent a photo of the part but later said there was no one to send to install it. The video board did not work for the opening home game of the season on August 17, 2021.

10. In October of 2021, Ace was called because the video board would not work. The Ace employee who came said a part was needed. The video board was not fully functioning for the state playoff game on November 12, 2021.

11. Ace also installed two 25-second clocks, one each on the north and south ends of the football field. The one on the north end of the field was attached to two upright steel supports by four brackets which were welded to the supports. The one on the south end was bent and twisted which forced repairs to be made. During repairs, it was discovered that the four brackets holding this clock on the supports were not welded. They were screwed to the supports at three of the brackets. The fourth bracket was not attached.

12. In addition to its other failings, Ace failed to provide the marketing and on-site marketing resources it was to provide under the contract. Such marketing was further prevented by the failure of Ace to produce a reliable video board for the marketing public to view. Ace

3

further failed and refused to provide the one-day service response—and sometimes any response—to requests of Trumann for assistance when the board was not working properly. The video board never worked through an entire football season at Trumann.

### Breaches of Contract by Ace

13. Trumann and Ace entered into a contract relationship. The contract began with the proposal of Ace, Exhibit A, followed by the acceptance of Trumann, Exhibit B. Pursuant to this contractual relationship, Ace promised a five-year warranty on its work. Ace performed work under the contract relationship, and Trumann paid what Ace required it to pay under the contract.

14. The contract of the parties required Ace to perform certain acts. Trumann did what the contract required of it, but Ace did not do what was required of it. As part of the contract, Ace provided Trumann with a five-year express warranty. The express warranty was for the manufacture and installation of a football scoreboard with a videoboard with play clocks and scoring controllers as well as a control system and software for overall production with video switcher solution-graphics-instant replay, live video feed, wired cameras, intercom, audio, and equipment for integration and connectivity. The express warranty was also for the manufacture and installation of custom side panels with graphics and the manufacture of two sponsorship panels. These express warranties formed a basis of the bargain of the parties.

15. Ace breached these express warranties by manufacturing, installing, supplying, and connecting a scoreboard and related equipment that would not perform the functions as described and that Ace could not or would not repair to any consistent working order. Ace also breached its express promises to provide marketing resources and on-site marketing work for 400 local

hours, to provide high school and college applications and references, to provide classroom instruction and material for replay system and software, and to provide a one-day service response.

16. The description of the products to be manufactured or installed by Ace clearly describe the particular use for which Ace is supplying the products and, thus, warrant that those products are fit for that use. Ace knew of the particular use and had reason to know that Trumann was relying on Ace's skill and judgment to select or furnish suitable products for that use, but the products were not fit for the particular purpose for which they were required. Ace breached its express and implied warranties of fitness for particular purpose.

17. The description of the products to be manufactured or installed by Ace clearly convey that the products were not fit for the ordinary purposes for which the products were sold and were to be used and did not conform to the descriptions, promises, and affirmations made by Ace to Trumann. Ace breached its express and implied warranties of merchantability.

16. Ace failed to do what the contractual relationship required of it and, therefore, breached its contract with Trumann. These breaches were material since they produced a failure to perform essential terms of the contract and substantially defeated the purpose of the contract for Trumann. The scoreboard never consistently functioned after completion, it never consistently functioned after being repaired following lightning damage, it fell due to faulty construction, and it never consistently functioned after being repaired by Ace following the fall.

### Negligence of Ace

17. Ace, in manufacturing and installing the video board and its various parts, had the duty to use ordinary care, the care a reasonably careful company would use under similar circumstances. Ace did not do so and was, therefore, negligent. Ibis negligence, in natural and continuous sequences, produced the failures of the products supplied by Ace.

18. The manufacturing, installation, maintenance, and repair of the video board and its various parts were under the exclusive control of Ace. In the normal course of events, the video board would not have failed or fallen if Ace had used ordinary care. Trumann did not, and had no opportunity to, change the character or content of the video board and its various parts. Trumann pleads the doctrine of *res ipsa loquitur*.

19. The negligence of Ace, in part, consists of the following failures to use ordinary care:

   a. manufacturing of structures which would not support their upright stance;
   b. installing and reusing components which would fail under expected usage;
   c. installing and failing to replace undersized supports for the video board;
   d. failing to respond promptly when equipment failed;
   e. failing to complete appropriate repairs;
   f. doing poor quality and sloppy work on the board components and 25-second clock;
   g. failing to supply and install equipment which would operate;
   h. failing to supply and install equipment which would withstand outdoor use;
   i. failing to replace damaged equipment and to protect equipment from weather; and
   j. otherwise failing to use ordinary care.

### Damages

20.   As a direct and proximate result of the breaches of contract by and negligence of Ace, Trumann has been damaged. This damage includes the amount of money paid by Trumann or its agents to Ace for the manufacture and installation of the video board and its component parts on two occasions, the loss of use of the board since its installation in September of 2018, the loss of advertising revenue for the same period, the loss of training for students, the loss of time and expense for maintenance workers trouble shooting issues with the video board, the damage to the relationship of the school to its community and patrons, the cost to replace the structure with a working video board and components, and the cost of rebuilding the relationship and good name of Trumann School District with the district patrons and the education community.

21. Trumann is entitled to recover judgment against Ace in an amount in excess of the amount required for federal court jurisdiction in diversity of citizenship cases. Trumann is further entitled to recover its attorney's fees, expenses of litigation, pre-judgment and post-judgment interest, and costs.

WHEREFORE, Trumann School District prays that it recover judgment against Ace Signs of Arkansas L.L.C. in an amount in excess of the amount required for federal court jurisdiction in diversity of citizenship cases; that it recover its attorney's fees, expenses of litigation, pre-judgment interest, post-judgment interest, and costs; and that it have all proper legal and equitable relief.

                MIXON & WORSHAM PLC
                Attorneys for Plaintiff
                P. O. Box 1442
                Jonesboro, AR 72403
                (PH) 870.935.8600 (FAX) 870.935.8622

                By _____
                    Donn Mixon  76079
                    dmixon@mixonlawfirm.com

| Approximately 15'x30' LED Video Board with Football Scoreboard and Playclocks. TriCaster Video Replay System, 2 cameras, and software. On-site installation and training. | ANDERSON E SIGNS | ACE SIGN AND OUTDOOR ADVERTISING | DAKTRONICS |
|---|---|---|---|
| Total Cost | $225,765.00 | $336,349.68 | $292,203.89 |
| Warranty | 5 Year | 5 Year | 5 Year |
| Marketing resources | ✗ | ✓ | ✓ |
| On-site marketing resources | ✗ | ✓ | ✗ |
| Sports Marketing Team (400 local hours) | ✗ | ✓ | ✗ |
| High school and collegiate sports applications & references | ✗ | ✓ | ✓ |
| Classroom instruction and material for replay system and software | ✗ | ✓ | ✓ |
| Furnishing on site replacement parts and training for quick repairs | ✗ | ✗ | ✓ |
| One day service response | ✓ | ✓ | ✗ |
| Attached quote | Anderson LED | ACE | Daktronics |

EXHIBIT A

# Minutes of the Trumann School District School Board

*A regular meeting of the Trumann School District School Board was held on the 12th day of March 2018. School Board members present were Taylor Morgan, President, Adam Jones, Vice President, Peggy Greenwell, and Mike Dungan. DJ Penter was absent*

### Call to Order:

Mr. Taylor Morgan, Board President, called the Regular School Board Meeting to order at 6:00 p.m.

### Consent Agenda

1. A motion was made by Mike Dungan, and seconded by Adam Jones to approve by consent, the minutes for January 8, 2018 Work session meeting, January 8, 2018 Regular Meeting, and February 12, 2018 Regular meeting. The vote was 4-0 with all in favor. Motion carried.
2. A motion was made by Peggy Greenwell, and seconded by Mike Dungan, to approve, by consent the Financial Report for February 2018. The vote was 4-0 with all in favor. Motion carried.

### New Business

3. A motion was made by Mike Dungan, and seconded by Adam Jones to approve a 1.53% raise for licensed staff added to base. An equivalent raise will be recommended for classified staff added to base salaries when contracts are renewed. The vote was 4-0 with all in favor. Motion carried.
*Taylor Morgan left the boardroom.*
4. A motion was made by Peggy Greenwell, and seconded by Mike Dungan to adopt a Resolution to conduct only early and absentee voting due to Scotty Taylor running for School Board Position 1 unopposed. The vote was 3-0 with all in favor. Motion carried.
*Taylor Morgan returned to the boardroom.*
5. A motion was made by Peggy Greenwell, and seconded by Adam Jones, to approve to adopt School Calendar #1 for the 2018-2019 school year. The vote was 4-0 with all in favor. Motion carried.
6. A motion was made by Mike Dungan, and seconded by Peggy Greenwell, to approve 7 School Choice requests out of the district. The vote was 4-0 with all in favor. Motion carried.
7. A motion was made by Adam Jones, and seconded by Peggy Greenwell, to approve the Community Eligibility Provision Program. The vote was 4-0 with all in favor. Motion carried.
8. A motion was made by Peggy Greenwell, and seconded by Mike Dungan, to approve to accept the bid for a video scoreboard from ACE Sign and Outdoor Advertising for the Football Complex. The vote was 4-0 with all in favor. Motion carried.
9. A motion was made by Peggy Greenwell, and seconded by Mike Dungan, to approve a change order for the Football Complex to install ornamental fencing along the front and to pave the back road by the visitor's locker room and restrooms. The vote was 4-0 with all in favor. Motion carried.
10. The board was reminded the Spring Musical "Little Mermaids" will be performed on Friday, April 6 at 7:00 pm., Saturday, April 7 at 7:00 p.m., and Sunday, April 8 at 2:00 p.m.
11. The board was reminded that the Prom will be April 28, 2018.
12. Mrs. Williams gave an update on Technology Refresh for 2018-2019 school year.
13. Mrs. Graham spoke about a series of School Safety meetings with administration, local law enforcement, and other agencies. The team has been discussing ways to make our schools even safer.

*The board entered executive session at 8:00 p.m.*
*The board returned from executive session at 9:43 p.m.*

**EXHIBIT B**

14. A motion was made by Peggy Greenwell, and seconded by Adam Jones to approve to accept the resignations of the following personnel:
    - Wendy Smith, THS nurse effective February 27, 2018.
    - Sara Stevens, THS principal secretary effective March 30, 2018.
    - Heidi Cline, TES teacher effective at the end of her 2017-2018 contract.
    - Carolyn Tribble, TES teacher, effective at the end of her 2017-2018 contract.
    - Jennifer Powell, TMS Art teacher, effective at the end of her 2017-2018 contract.
    - Pattie McWayne, Parent Center Coordinator, effective at the end of her 2017-2018 contract.

    The vote was 4-0 with all in favor. Motion Carried.

17. A motion was made by Peggy Greenwell, and seconded by Mike Dungan, to approve to hire the following personnel:
    - Michael VanWinkle, Agri teacher, with the assignment at THS, 12 month contract, 247 days contingent upon passing the criminal background check.
    - Cody Wallis, Assistant Principal, with the assignment at TMS, 226 day contract, contingent pending licensure based on passing the Praxis exam for building level leadership.
    - Glenda Kilgore, Assistant Bookkeeper, 12 month contract, 247 days.
    - Jeresa Markin, Food Service Director/APSCN Coordinator, 12 month contract, 247 days.
    - Kimberley Stewart, LPN with the assignment at THS.

    The vote was 4-0 with all in favor. Motion carried.

18. A motion was made by Peggy Greenwell, and seconded by Mike Dungan, to authorize Mrs. Graham, Superintendent, to hire a LPN and a counselors secretary. The vote was 4-0 with all in favor. Motion carried.

19. A motion was made by Adam Jones, and seconded by Peggy Greenwell, to renew the contracts for the 2018-2019 school year for the Licensed Staff per list provided. The vote was 4-0 with all in favor. Motion carried.

*A motion was made Adam Jones, and seconded by Peggy Greenwell to adjourn.*
*The vote was 4-0 with all in favor. Motion carried.*

*The meeting adjourned at 9:50 p.m.*

_____
President

_____
Secretary

_____
Superintendent